IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:04CR300-V

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | MEMORANDUM AND RECOMMENDATION |
| ) | AND ORDER |
| QUOC THANH DOAN, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion To Suppress" filed January 26, 2005 (document #14) and the Defendant's "Brief in Support of Motion To Suppress" filed February 22, 2005 (document #16). The "Government's Response To Motion To Suppress" was filed February 22, 2005, and the undersigned conducted an evidentiary hearing on Monday, March 21, 2005. Thus, the Motion To Suppress is now ripe for disposition.

Having carefully considered the evidence, arguments of counsel, and the applicable authority, the undersigned will respectfully recommend that the Defendant's motion be <u>granted</u>.

### I. FACTUAL BACKGROUND AND FINDINGS

The events relevant to the subject motion began at approximately 11:35 a.m. on November 4, 2004 when Detective Jerry W. Soles of the Davidson County Sheriff's Department observed the Defendant driving a gray 2001 Lincoln LS vehicle on Interstate 85.

Detective Soles testified that he observed the Defendant driving with wipers operating (it was raining), but without headlights.

North Carolina General Statute 20-129(a)(4) requires headlights to be on anytime wipers are operating. Observing a violation of this statute, Det. Soles decided to stop the Defendant's vehicle.

When Det. Soles initially approached the vehicle, he asked to see the Defendant's driver's license and vehicle registration, which the Defendant produced. At that point Det. Soles testified that the Defendant's hands appeared to be shaking, and that he smelled air freshener, which he has been trained to consider as a "masking agent" for the odor of drugs. Det. Soles also testified that he thought he detected an odor of "green marijuana" in addition to air freshener.

Det. Soles directed the Defendant to exit the vehicle, which he did. When he shook the Defendant's hand, it seemed sweaty and when speaking (English, his second language), Det. Soles testified that it was with a "stutter." Det. Soles advised the Defendant why he had been stopped, and asked him where he was going. The Defendant responded that he was traveling to Raleigh to visit friends, and that he was meeting them on or around Capitol Boulevard, a fact essentially confirmed a few minutes later when Det. Soles spoke with Romal Siu, the Defendant's only passenger.

Det. Soles and the Defendant walked together to the patrol car. While they were seated in the patrol car, Det. Soles testified that he noticed the Defendant's carotid artery, which he believed to be beating in a pronounced manner, another "indicator" of "crime being afoot" according to his training. Det. Soles could not explain, on cross-examination, how he observed the pulse on the right side of the Defendant's neck while the Defendant was seated in his passenger seat (with only the left side of the Defendant's neck facing him).

Det. Soles told the Defendant he thought he smelled "weed" (marijuana) in his vehicle. The Defendant stated that no one had smoked marijuana in his car, and in response to a follow-up question, again denied that there was marijuana in his car. No marijuana, or evidence of marijuana, was ever discovered in the vehicle, and the other law enforcement agent present (who the Government chose not to call as a witness) explicitly stated that all he smelled was air freshener.

At this point Det. Soles issued the Defendant a warning citation for not operating his headlights, and told him--apparently falsely, based on soon-to-unfold events--that he was free to go. However, as is customary in such highway "criminal interdiction," the Detective almost immediately asked the Defendant if he could search his car. Twice the Defendant refused, stating that "he needed to get going."

Rather than allowing the Defendant to leave, Det. Soles told him he was going to search the car anyway, based on "probable cause" to believe it contained marijuana. The Detective made a brief, cursory search of the passenger section of the Defendant's vehicle, then proceeded to open and search the trunk.

Search of the trunk of the vehicle led to the discovery not of marijuana, but of 15,000 ecstasy pills concealed in a stereo speaker in the trunk. Prior to disconnecting the speaker and discovering the pills, Det. Soles noticed that there were no wires connecting the speakers to the stereo system in the Defendant's vehicle, and that there were only two screws holding one speaker in place and three holding the other (where there "should have been" eight in each). Det. Soles also testified that he noticed the screws were of different kinds and were "well worn" (indicating they had been screwed in and out more than would be expected had the screws only been used to install the speakers).

The Defendant was arrested following discovery of the ecstasy pills and was transported, in custody, to the Davidson County Sheriff's Department. After being advised of his <u>Miranda</u> rights, which he waived, the Defendant proceeded to make inculpatory statements.

The Defendant was transported next to the U.S. Immigration and Customs Enforcement office in Charlotte, still in custody, where a Vietnamese detective (Detective Nguyen) spoke with the Defendant

(who is also Vietnamese) and determined that he understood his rights. At approximately 6:18 p.m. on November 4, 2004, the Defendant signed a "Consent To Search" form, authorizing the search of his residence (8730 Meadowmont View Drive in Charlotte).

During the search of his residence, agents discovered additional incriminating evidence.

Once defense counsel made it clear that his argument for suppression focused solely on the legitimacy of the traffic stop and search of the vehicle (not, except as "fruit of the poisonous tree," on whether the <u>Miranda</u> waiver, Defendant's statements, or search of the Defendant's residence were otherwise improper), the Government's only witness was Det. Soles. As noted, the Government chose not to call the second law enforcement officer who was present on the scene (Corporal Donnie Matthews of the Guilford County Sheriff's Department), who did <u>not</u> detect the odor of marijuana on the date in question.

Det. Soles conceded that his basis for concluding there was probable cause to search--shaking and sweaty hands, stuttering, and carotid artery notwithstanding--was his belief that he detected, in addition to the strong air freshener, an odor of "green marijuana." The Detective's testimony on this point (that his primary basis for having probable cause to search the vehicle was his belief that he had smelled marijuana) is consistent with his written report prepared shortly thereafter.

5

The Defendant called two witnesses at the suppression hearing, Dr. Alan A. Rosenbloom, a physician practicing internal medicine, and Romal Siu, the Defendant' passenger on the date in question. Although the undersigned does not mean to impugn Det. Soles' character or integrity, both defense witnesses clearly tended to undermine Det. Soles' credibility as a witness.

Dr. Rosenbloom was called to testify on a narrow point: the effect of stress on, and ability to observe, the carotid artery. Specifically, testifying as an expert and as a fact witness, Dr. Rosenbloom testified that he had seen the Defendant in his medical office two weeks earlier, directed him to run in place until his heart rate increased to 120 beats per minute, and only then could observe the pulse in his carotid artery--but even then, only under "good light." Dr. Rosenbloom observed the videotape of the traffic stop (on an overcast, rainy day in January), reviewed Det. Soles' statements, and opined that it was "highly unlikely" the carotid artery could have been observed by Det. Soles under those circumstances and/or in that lighting.

Romal Siu testified, <u>inter alia</u>, that he did not know the ecstacy pills were in the speaker in the trunk, that he had never been charged with any crime, and that neither he nor the Defendant had been in possession of marijuana on the date in question. Mr. Siu, like the Defendant, is Vietnamese and speaks English as a second language. He testified that he had known the Defendant for

"five or six years" (since they were teenagers), that he asked the Defendant to drive him to Raleigh to meet a friend, and that the Defendant (whom he described, in halting English, as "a clean guy") "always" kept a container of air freshener under an air vent in his car.

On direct examination, Mr. Romal proceeded to produce a container of liquid, heavily perfumed air freshener, which he testified he had retrieved earlier that day from the air vent in the Defendant's vehicle (the same vehicle stopped by Det. Soles on January 26, 2005). The undersigned takes judicial notice of its strong, sweet smell--not an odor everyone would find pleasing. Mr. Romal testified, however, that the Defendant really liked the smell, "always" had one in his car, and that "he also has them in his house."

## II. CONCLUSIONS OF LAW

The merits of the Defendant's Motion To Suppress essentially depends on two issues: <u>first</u>, whether the initial traffic stop--purportedly for failure to turn on headlights while operating wipers--was proper; and <u>second</u>, whether there was probable cause thereafter to search the Defendant's vehicle. The resolution of both issues, which will be addressed in turn, depends almost entirely on the credibility of Detective Sole's testimony.

For the reasons stated, the undersigned concludes that the initial traffic stop was <u>proper</u>, but that the search of the vehicle was not based on probable cause and was therefore <u>improper</u>.

7

A. **Initial Traffic Stop**

Ordinarily, a vehicle stop is permitted only upon reasonable and articulable suspicion of unlawful conduct. See, e.g., United States v. Arvizu, 544 U.S. 266, 273-75 (2002)(approving vehicle stop based on "reasonable suspicion"); City of Indianapolis v. Edmond, 531 U.S. 32, 35-50 (2000)(use of roadblocks to catch drug traffickers, a.k.a. "drug checkpoints," held unconstitutional); United States v. Jones, 242 F.3d 215, 218-19 (4th Cir. 2000)(vehicle stop based on uncorroborated anonymous tip held unconstitutional, suppressing evidence and vacating conviction); United States v. King, 119 F.3d 290, 293-94 (4th Cir. 1997)(vehicle stop proper if based on "reasonable suspicion" of unlawful conduct); and United States v. Hassan El, 5 F.3d 726, 729 (4th Cir. 1993)(same).

In this case Det. Sole has credibly testified that he observed a violation of North Carolina law, the operation of wipers without headlights, and that he exercised his discretion in favor of stopping the offending driver. As the Government correctly notes in its Response, following the Supreme Court's decision in Whren v. United States, 517 U.S. 806 (1996), whatever additional motivation or intention Detective Sole may have had in deciding to stop the Defendant's vehicle on January 26, 2005 is no defense--as long as there was also an objectively reasonable basis for the stop. Accord United States v. McDonald, 61 F.3d 248, 254 (1996); and

Hassan El, 5 F.3d at 730 ("objective test" allows vehicle stop for traffic violation, "however minor," even if stop would not have occurred "but for some hunch or inarticulable suspicion of other criminal activity").

Applying these principles to the facts of this case, and crediting Det. Soles' testimony as credible, it is clear that the initial stop was proper. Accord Ohio v. Robinette, 519 U.S. 33, 35 (1996)(as long as officer has objective basis for vehicle stop, irrespective of the officer's other subjective motivation or suspicion, subsequently seized evidence will not be suppressed on the ground that initial stop was "pretextual").

### B. Vehicle Search

As noted above, whether the search of the Defendant's vehicle without his consent was proper turns entirely on the credibility of Det. Soles' belief that, in addition to the strong smell of air freshener, he detected the odor of "green marijuana" on January 25, 2005.

It is well established that in the absence of "reasonable suspicion that criminal activity is afoot," the permitted scope of a "routine traffic stop" is narrowly defined. United States v. Brugal, 209 F.3d 353, 358 (4th Cir.)(en banc), cert. denied, 531 U.S. 961 (2000), quoting Terry v. Ohio, 392 U.S. 1, 30 (1968). Specifically, "during a routine traffic stop, the officer may request a driver's license and vehicle registration, run a computer

check, and issue a citation, but ... any further detention for questioning is beyond the scope of a Terry stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime." Id., quoting United States v. Rusher, 966 F.2d 868, 876-77 (4th Cir. 1992).

In this case Det. Soles was within his lawful perameters in deciding to stop the Defendant's vehicle, and to run a computer check for license suspension, citations, warrants, etc. However, in the absence of "reasonable suspicion"--and the undersigned does not find credible evidence of reasonable suspicion in this case-- that is where his lawful authority ended. In other words, once the Defendant produced his license and registration, was found to have no outstanding warrants or citations, and declined Det. Soles' request to search his car--twice--he should have been allowed to depart.

To reach any other conclusion would effectively strip the well-established law governing such situations of any substantive meaning. If consent to search is to remain a legitimate avenue for a lawful search, a suspect must be allowed to refuse to consent, which is exactly what happened here. And likewise, to allow a law enforcement officer's mistaken suspicion that a strong, sweet odor of perfumed air freshener is really "green marijuana" to satisfy the probable cause requirement would go a long way toward removing the substantive limitations inherent in this ancient and important requirement.

As noted previously, the conclusion that Det. Soles was engaged in little more than wishful thinking when he discovered "indicators" that "crime was afoot" is not to suggest that Det. Soles intentionally manufactured evidence or testified falsely. Nor is the conclusion that Det. Soles' mistaken belief that he smelled "green marijuana" is insufficient to satisfy the probable cause requirement meant to impugn the Detective's character or integrity. However, if the Court is to be anything more than a rubber stamp for well-intended if sometimes over-zealous law enforcement officers, the Government's showing in this case simply must be found insufficient.

C. **Fruit of the Poisonous Tree**.

As the Government essentially conceded at the suppression hearing, and as ably argued in the Defendant's "Brief in Support of Motion To Suppress," if the vehicle search and resulting arrest were unlawful, then the subsequent statements and evidence seized at the Defendant's residence must also be suppressed. Accord Taylor v. Alabama, 457 U.S. 687 (1982); and Wong Sun v. United States, 371 U.S. 471 (1963). Because the vehicle search was without probable cause and therefore unlawful, the undersigned must therefore respectfully recommend that this additional evidence also be suppressed.

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the Defendant's "Motion To Suppress" (document #14) be **GRANTED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised, pursuant to 28 U.S.C. §636(b)(1)(c), that written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after its receipt. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum and Recommendation with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 93-94 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties (AUSA Keith M. Cave and defense counsel K. E. Krispen Culbertson); and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED**, this 24th day of March, 2005.

*Carl Horn, III*
_____
**CARL HORN, III**
**U.S. Magistrate Judge**

```
                                                                    ssh
                  United States District Court
                            for the
                 Western District of North Carolina
                         March 25, 2005


               * * MAILING CERTIFICATE OF CLERK * *


Re:   3:04-cr-00300


True and correct copies of the attached were mailed by the clerk to the
following:


     Keith M. Cave, Esq.
     U.S. Attorney's Office
     227 W. Trade St.
     1700 Cariilon Bldg.
     Charlotte, NC  28202

     Krispen Culbertson, Esq.
     208 Exchange Place
     Greensboro, NC  27401



cc:
Judge                           (✓)
Magistrate Judge                ( )
U.S. Marshal                    ( )
Probation                       ( )
U.S. Attorney                   (✓)
Atty. for Deft.                 (✓)
Defendant                       ( )
Warden                          ( )
Bureau of Prisons               ( )
Court Reporter                  ( )
Courtroom Deputy                ( )
Orig-Security                   ( )
Bankruptcy Clerk's Ofc.         ( )
Other_____             ( )


                                        Frank G. Johns, Clerk
     Date: 3/25/05                      By: _____
                                              Deputy Clerk
```