IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04cr300

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| | ) | |
| **QUOC THANH DOAN.** | ) | |

## I.    INTRODUCTION

This matter comes before the Court on the government's Objections (Doc. No. 20) to the Memorandum and Recommendation (Doc. No. 19) entered by the magistrate judge, which recommended that defendant's Motion to Suppress (Doc. No. 14) be granted.

On November 4, 2004 Detective Jerry Soles of the Davidson County Sheriff's Department noticed a gray 2001 Lincoln LS on Interstate 85 driving in the drizzling rain with its wipers on, but not its headlights. Observing a violation of North Carolina General Statute 20-129(a)(4),[1] Detective Soles decided to stop the vehicle. Based primarily on what the detective believed to be the odor of "green" (also referred to as "uncut", "unburnt" or "fresh") marijuana issuing from inside the car, as well as other suspicious behavior by the vehicle's occupants, the police searched the interior of the defendant's car and its trunk, discovering 15,000 pills of methamphetamine ("MDMA" or "Ecstasy").

The defendant filed a Motion to Suppress (Doc. No. 14), arguing that Detective Soles did not have probable cause to search his vehicle. After a suppression hearing, the magistrate judge issued a "Memorandum and Recommendation" (hereinafter "M&R") (Doc. No. 20) recommending the defendant's Motion to Suppress be granted.

---

[1] North Carolina General Statute 20-129(a)(4) makes it an infraction in certain circumstances to fail to employ head lights time when windshield wipers are in use.

1

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's M&R is both statutorily and constitutionally required. See United States v. Raddatz, 447 U S 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). This Court, however, will review only those portions of the report, specified proposed findings, or recommendations to which objections are made, 28 U.S.C. § 636(b), or are necessary for an accurate review.

After reviewing the entire record, this Court conducted its own hearing to determine whether, given the totality of the circumstances, Detective Soles possessed probable cause to justify the warrantless search of the defendant's vehicle. For the reasons stated below, the defendant's Motion to Suppress is granted.

## II.    FINDINGS OF FACT

A video camera mounted on Detective Soles's vehicle yielded the tape that is the chief visual and audio record of the events at issue. The Court has carefully examined this tape, Detective Soles's testimony about the traffic stop and subsequent seizure, and the entire record.

On November 4, 2004 Detective Jerry Soles of the Davidson County Sheriff's Department noticed a gray 2001 Lincoln LS on Interstate 85 driving in the drizzling rain. Since the vehicle was traveling with its wipers on, but not its headlights, Detective Soles pulled the vehicle over. The defendant, Mr. Doan, was the driver, and his companion, Mr. Sui, was riding in the passenger seat.

The video tape reveals that after both vehicles had pulled to the shoulder of I-85, Detective Soles approached the front passenger-side window, while his partner, Deputy Donnie Matthews,[2] approached the front driver-side window. Detective Soles leaned inside the open window of the defendant's vehicle and requested the driver's license and registration, an encounter lasting approximately twenty seconds. Detective Soles testified it was at this moment that he

---

[2]Deputy Donnie Matthews of the Guilford County Sheriff's Department was "cross-training" with Detective Soles that day.

initially detected the strong odor of air freshener and an odor of "green" (meaning "unburnt" or "fresh") marijuana. According to Detective Soles, a strong odor of air freshener is frequently used to mask the odor of such narcotics as marijuana. The detective also testified it was during this initial conversation that he observed the defendant's carotid artery pulsating visibly in his neck, a sign of extreme nervousness according to Detective Soles.

The video tape also reveals that, while Detective Soles was speaking with the defendant, Deputy Matthews remained approximately two feet from the driver's window, until he escorted the defendant from the driver's seat, back to the police car. Although Deputy Matthews would remain in between the two vehicles for the majority of the stop and subsequent search, the video shows the deputy at one point is standing near the passenger side window for approximately fifteen seconds. Once back in his patrol vehicle, Detective Soles informed the defendant that he had been stopped for driving in the rain with his wipers on, but not his headlights. The detective then inquired as to the defendant's place of residence, his destination, and the purpose and length of his trip.

Detective Soles credibly testified the defendant demonstrated certain suspicious behavior during the questioning that led him to believe that "criminal activity was afoot." The detective noticed that the defendant's hands were shaking; his sweating, breathing and stuttering were more pronounced than is typical of most people's nervousness during a traffic stop; and the defendant described only vague travel plans individual in response to Detective Soles's inquiries. After this initial questioning, Detective Soles returned to the front passenger side of the defendant's car to confirm his earlier scenting of green marijuana, and to see if the passenger corroborated the defendant's travel plans.

Detective Soles testified he confirmed his early scenting of marijuana. Detective Soles also testified he asked the passenger questions substantially similar to those he had asked the defendant a few moments earlier, but that the passenger provided somewhat different information about their travel plans. The detective also testified that, as with the defendant, the carotid artery visibly pulsated

in the passenger's neck; his hands shook; and his breathing, stuttering, and sweating were pronounced. Mr. Sui was reluctant to make eye contact.

Detective Soles returned to his patrol vehicle and continued to question the defendant. When Detective Soles told the defendant that he "smelled a little weed" in the car, the defendant responded by saying no one ever smoked "any [marijuana] in the car." The Detective also testified that when he asked whether the defendant had "anything illegal in the car" like [any] drugs, cocaine, marijuana...or pills?", the defendant seemed reluctant to make eye contact, instead giving what the Detective characterized as "a distant stare." Moreover, when the Detective asked if there were any cocaine or ecstasy in the car, the defendant hesitated, then swallowed hard, shook his head and murmured "uh-uh."

Detective Soles returned the defendant's driver's license and informed him that he was "good to go." As the defendant was leaving the vehicle, Detective Soles asked if he could search the defendant's car. Although the defendant faintly replied he "didn't mind," he immediately thereafter twice mumbled that he "had to get going." Detective Soles testified the defendant was nervous; and it was at that point the detective told the defendant that he had "probable cause to search." Detective Soles then proceeded to search the defendant's car, beginning with a brief inspection of the passenger compartment, then proceeding to the trunk.

While Detective Soles was searching the defendant's car, the defendant was heard to say "I don't know how he is getting the weed smell," to which Deputy Matthews responded "I don't know what he said...I mean, I smell air freshener."

During the search, Detective Soles discovered a pair of large audio floor-speakers that had been placed inside the defendant's trunk. The detective testified the speakers seemed suspicious in that they were missing most of their screws, and those that were present were mismatched and stripped. Detective Soles unscrewed the face of the speakers and found several bags of pills, later identified as

MDMA, that had been concealed inside the speakers. The defendant and passenger were then arrested. No marijuana or indicia thereof was discovered in the defendant's car.

After he was indicted on drug trafficking and related charges, the defendant filed the instant motion arguing the evidence seized from his car, and any fruit derivatively obtained, should be suppressed on the basis of an unconstitutional search.

## III.   ANALYSIS OF LAW

As a predicate to its analysis of the instant case, the Court notes that the proper purpose of the exclusionary rule is to ensure the police comply with the necessary procedures before executing a search: it is not a personal constitutional right. Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Its purpose is not to punish an individual officer for an inadvertent mistake, but rather to legitimize our constitutional protections by systematically ensuring that the police engage in legitimate conduct.

Because Detective Soles searched the defendant's car without obtaining a warrant, the burden of proof is on the government to show at the suppression hearing that probable cause existed. See United States v. Carhee, 27 F.3d 1493, 1496 (10th Cir. 1994); cf. Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (government has burden of proving exception to warrant requirement).

The standard of probable cause exists to "protect citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime," while at the same time giving "fair leeway for enforcing the law in the community's protection." Maryland v. Pringle, 540 U.S. 366, 371 124 S.Ct. 795, 799, 157 L.Ed.2d 769 (2003) (quoting Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)) (internal quotation marks omitted).

It is well-settled law that police officers may conduct a warrantless search of the inside of a vehicle legitimately stopped for a traffic offense only if they have a objective basis on which to infer the vehicle contains evidence of criminal activity. <u>United States v. Ross</u>, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Whether an officer has probable cause is judged by analyzing the totality of the circumstances as generally understood by those versed in the field of law enforcement, <u>Illinois v. Gates</u>, 462 U.S. 213, 230, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and in light of the training and experiences of law enforcement officers at the scene. <u>See</u> <u>Ornelas v. United States</u>, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); <u>United States v. Arvizu</u>, 534 U.S. 266, 273 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); <u>United States v. Sims</u>, 296 F.3d 284, 287 (4th Cir. 2002). These inferences, however, must be reasonable (<u>United States v. Cortez</u>, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621(1981)); if they are not, then any subsequent search is illegal and the fruits of that search shall be suppressed. <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The government concedes that the factors, other than the smell of marijuana, which created suspicion on the part of Detective Soles that "criminal activity was afoot" do not, standing alone, establish probable cause. This case turns on whether Detective Soles's smell of marijuana was objectively reasonable. The evidence falls short of establishing that it was reasonable.

Detective Soles had been involved in interdiction efforts for less than two and a half years. Although he characterized his unit's efforts as "aggressively enforcing the vehicle laws", there is scant evidence of the number of stops which involved fresh cut marijuana; and no evidence of opportunities in which that odor was detected over the masking smell of air freshener. There was no evidence presented that any of the over 300 hours of training involved the detection of the odor of marijuana;

nor evidence that Detective Soles had any unique olfactory ability to detect such odor. Unlike other cases in which the odor of marijuana is sufficient to establish probable cause if detected by one who has sufficient experience (see e.g., United States v. Nicholson, 17 F.3d 1294, 1297 (10th Cir. 1994) (warrantless search of entire truck including undercarriage permissible when police had probable cause to believe truck contained contraband based on experienced officer's recognition of marijuana odor as he approached lawfully stopped truck)),[3] such deference to experience is not warranted here.

Deputy Matthews participated in the car stop and only smelled air freshener. He did not smell the odor of marijuana. Although Matthews did not testify, the video clearly shows him assisting the defendant out of the driver's side door, and leaning into the passenger window for a duration of approximately fifteen seconds. During Detective Soles's search of the car and in response to a puzzled statement from the defendant wondering how the detective could have smelled "weed", Deputy Matthews responded: "I don't know what he said...I mean, I smell air freshener."

While Detective Soles never quantified the strength of the odor of marijuana that he smelled, it was insufficient for Deputy Matthews to smell. Although there is no bright-line rule regarding the level of odor necessary for probable cause, the Court of Appeals has consistently mentioned the detection of a "strong odor" of marijuana as establishing probable cause. See e.g., United States v. Haley, 669 F.2d 201 (4th Cir. 1982) ("[t]he strong marijuana odor emanating from the vehicle").[4]

Finally, no corroborative evidence of marijuana or indicia of marijuana possession or

---

[3]See generally United States v. Blair, 366 F.Supp. 1036 (S.D. N.Y. 1973); United States v. Turner, 119 F.3d 18, 19-21 (D.C. Cir. 1997); United States v. Rumpf, 576 F.2d 818 (10th Cir. 1978); United States v. Burrow, 396 F.Supp. 890, (D.Md. 1975); United States v. Wiley, 673 F.Supp. 1405, (E.D.Va.,1987); United States v. Gutierrez, 560 F.2d 195 (5th Cir. 1977).
[4]Accord United States v. Norman, 701 F.2d 295 (4th Cir. 1983); United States v. Haynie, 637 F.2d 227, 233 (4th Cir. 1980), cert. denied sub nom. Fletcher v. United States, 51 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981); United States v. Sifuentes, 504 F.2d 845, 848 (4th Cir. 1974); United States v. Manbeck, 744 F.2d 360 (4th Cir. 1984).

distribution was discovered. While not dispositive, its absence is conspicuous. When the absence of corroborating evidence is considered with the failure of the other officer on scene to detect the odor and the relative inexperience of the detective, the Court is left with too many missing pieces of the puzzle from which to construct a finding of probable cause.

This case is unlike other cases in which courts have found that an officer may possess probable cause even based upon a mistake of fact. The nature of the evidence seized may make reasonable an officer's inference that criminal activity was afoot, even if he may have mistaken a lawful substance for an unlawful one (i.e., sugar for cocaine or heroin). See, e.g., United States v. Russell, 655 F.2d 1261 (D.C. Cir. 1981) (a clear plastic package containing a white powder and a brown, change-type bag inside the passenger compartment of the defendant's vehicle was sufficient to establish probable cause, even though the white power turned out to be sugar); United States v. Culbreath, 915 F.2d 1566 (4th Cir. 1990) (police officer did have probable cause to search the defendant's vehicle when an officer looked into the passenger window and noticed a plastic bag containing white powder). In all of these cases, there was an objective basis for the conclusion, albeit erroneous, that an unlawful substance had been possessed. The Court sees no such objective reasonableness here.

### IV. CONCLUSION

In conclusion, viewing the totality of the circumstances, this Court does not find that the evidence established an objective basis for probable cause to search the defendant's vehicle.

**IT IS, THEREFORE, ORDERED** that the government's Objections to the Magistrate's Memorandum and Recommendation (Doc. No. 20) be overruled, and that the defendant's Motion to Suppress (Doc No.14 ) is **GRANTED.**

**Signed: August 16, 2005**

Robert J. Conrad, Jr.
United States District Judge